*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. CARTER, Minor.

UNPUBLISHED
June 11, 2026
10:57 AM

No. 377409
Kent Circuit Court
Family Division
LC No. 25-050783-NA

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child, LC, under MCL 712A.19b(3)(g) (failure to provide proper care or custody), (3)(i) (failure to rectify conditions leading to termination of parental rights to siblings), and (3)(j) (reasonable likelihood that the child will be harmed if returned). We vacate the order terminating the parental rights of respondent-mother because the Department of Health and Human Services (DHHS) failed to properly request termination at the initial disposition, and remand to the trial court for further proceedings. Respondent-mother also argues that her counsel was ineffective at the adjudication phase; as a result, she argues that we should likewise vacate the court's order of adjudication establishing jurisdiction over LC. We disagree with that additional argument.

## I. FACTUAL AND PROCEDURAL HISTORY

Children's Protective Services (CPS) began an investigation into respondent-mother's care of LC shortly after LC's birth in December 2024 because respondent-mother's parental rights to her other children were previously terminated. Respondent-mother informed the CPS investigator that she used alcohol and drugs during her pregnancy. She engaged in various mental-health and substance-abuse recovery programs, and CPS eventually concluded its investigation. In May 2025, however, CPS received notice that respondent-mother went to the emergency department at a hospital and told the staff that she was no longer able to care for LC because LC was a product of rape, and respondent-mother could not look at LC anymore because this was making her mental health worse. Respondent-mother asked the hospital staff to call CPS to take LC away. She then entered an inpatient, mental-health treatment program. LC was in good health and was not deprived of any needs at the time that she entered protective custody.

DHHS petitioned to remove LC from respondent-mother's care. At the emergency removal hearing, the CPS investigator testified that respondent-mother's parental rights to her other children were terminated because of "concerns of domestic violence, her mental health, homelessness, and some substance use." She testified that she was requesting termination of respondent-mother's parental rights in this case. Because respondent-mother was in an inpatient treatment program with an unknown release date, she could not care for LC. The trial court authorized the petition. After a bench trial for adjudication in July 2025 that was continued into August 2025, the trial court exercised jurisdiction over LC and immediately moved to the initial disposition, in which it terminated respondent-mother's parental rights. This appeal followed.

## II. STANDARD OF REVIEW

Because respondent-mother did not raise it at trial, the issue of whether petitioner failed to properly request termination at the initial disposition is not preserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). In an appeal involving the termination of parental rights, unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* at 9. "The party asserting plain error bears the burden of persuasion with respect to prejudice." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023). The respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *In re Ferranti*, 504 Mich 1; 29; 934 NW2d 610 (2019). The error must also seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks and citation omitted).

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. Jurisdiction must be established by a preponderance of the evidence . . . ." *In re Christie*, 339 Mich App 1, 4; 981 NW2d 172 (2021) (quotation marks and citations omitted). "Challenges to the court's decision to exercise jurisdiction are reviewed for clear error in light of the court's findings of fact. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citations omitted).

## III. TERMINATION AT INITIAL DISPOSITION

Respondent-mother argues that the trial court erred when it terminated her parental rights because it failed to comply with the requirements for termination at the initial disposition under MCR 3.977(E). We agree.

The trial court may only terminate parental rights at the initial disposition if the following requirements are satisfied:

> **(E) Termination of Parental Rights at the Initial Disposition.** The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);

(4) termination of parental rights is in the child's best interests. [MCR 3.977(E).]

## A. REQUEST FOR TERMINATION

Although DHHS usually uses forms approved by the State Court Administrative Office (SCAO) for its petitions for termination of parental rights, no law requires it to do so. MCL 712A.11(3) only requires that the petition explain the facts giving rise to jurisdiction and include the following information:

(a) The juvenile's name, birth date, and address.

(b) The name and address of the juvenile's parents.

(c) The name and address of the juvenile's legal guardian, if there is a legal guardian.

(d) The name and address of each person having custody or control of the juvenile.

(e) The name and address of the juvenile's nearest known relative, if no parent or legal guardian can be found.

MCR 3.961(B) adds a few additional requirements:

(B) A petition must contain the following information, if known:

(3) The essential facts that constitute an offense against the child under the Juvenile Code.

(4) A citation to the section of the Juvenile Code relied on for jurisdiction.

(5) The child's membership or eligibility for membership in an Indian tribe, if any, and the identity of the tribe.

(6) The type of relief requested. *A request for removal of the child or a parent or for termination of parental rights at the initial disposition must be specifically stated.* [MCR 3.961(B)(3) through (6) (emphasis added).]

Respondent-mother argues that the petition did not properly request termination as required under MCR 3.977(E)(1). The CPS investigator prepared the petition using the SCAO-approved form, but she did not check box 8(d) of the form to request termination of respondent-mother's parental rights. Instead, she included a list of recommendations at the end of the list of allegations in an attachment to the form, which stated, in relevant part, as follows:

It is respectfully recommended [respondent-mother]'s parental rights be terminated per MCLA (3)(b)(i)[.]

Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent had failed to rectify the conditions that led to the prior termination of parental rights.

The petition used an incorrect citation, but it is clear from the language that DHHS requested termination on the basis of MCL 712A.19b(3)(i). The same language is also used in MCL 712A.2(a)(2) as an aggravated circumstance that would justify forgoing reasonable efforts and terminating at the initial disposition, but the petition did not cite that statute. The petition says nothing about the initial disposition. This falls short of the requirement that the petition *specifically* state its request for removal *at the initial disposition*. MCR 3.961(b)(6).

Although DHHS was not required to use the SCAO form, its improper use of the form obscured its intentions. The request for termination was phrased as a "recommendation" and buried in the last few lines of an attachment that was represented on the SCAO form as only a list of allegations. The parties and the trial court would expect any request for termination of parental rights of the respondent-mother to appear in section 8(d) of the SCAO form as part of the request for relief, not at the end of an attachment to the form providing a list of allegations in section 7. The CPS investigator's clarification during the removal hearing that she was requesting termination did not retroactively satisfy MCR 3.977(E)(1)'s requirement that the petition actually contain that request.

Termination at the initial disposition on the DHHS's petition was plainly erroneous because it was clear and obvious from the applicable court rules that the petition must specifically request termination at the initial disposition. That plain error affected respondent-mother's substantial rights because she and her counsel did not have proper notice of, and could not therefore prepare for, the issue of termination at the initial disposition hearing. By way of example, because the petition focused on respondent-mother's prior terminations, they could have attempted to gather evidence regarding those prior terminations, the specific services offered therein, the barriers present in those cases, and whether respondent-mother rectified any or all of those conditions. If the trial court had recognized that petitioner failed to properly move for termination at the initial disposition, then it would likely have afforded respondent-mother the opportunity to work toward reunification instead of terminating her parental rights. The rush to terminate respondent-mother's parental rights so early in the proceedings without verifying that DHHS followed the proper procedures seriously affected the fairness and integrity of the judicial

-4-

proceedings. Accordingly, the trial court's plain error regarding the petition's failure to properly request termination requires reversal.

## B. JURISDICTION

As relevant here, respondent-mother also argues that she received ineffective assistance of counsel at the adjudication phase because her attorney did not ask any questions of any witness and only entered a "general objection" to the court taking jurisdiction over respondent-mother. Even though the case presented by petitioner focused almost entirely on respondent-mother's prior terminations, "he did not ask any questions or present any evidence regarding the conditions that existed in those cases, the services offered to Respondent-Appellant, and the success or failure thereof . . . ." As a result, respondent-mother argues that her counsel forfeited any argument that she had against such a finding.

"Claims of ineffective assistance of counsel are mixed questions of fact and law." *In re Lovitt*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 367124); slip op at 2. "We review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo." *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "Where a party fails to preserve a claim of ineffective assistance of counsel, this Court's review is limited to mistakes apparent on the record." *In re Lovitt*, ___ Mich App at ___; slip at 2 (quotations marks and citation omitted). Respondent-mother concedes that this issue is not preserved because it was never raised in the trial court.

In order to prove ineffective assistance of counsel, "it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85, 896 NW2d 452 (2016). "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *In re Lovitt*, ___ Mich App at ___; slip at 6 (quotations marks and citation omitted). "To establish prejudice, a party claiming ineffective assistance must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. (quotation marks and citation omitted).

In the present case, even if respondent-mother could show that her counsel's performance was deficient, she has not shown that it was reasonably probable that the trial court would not have exercised jurisdiction over respondent-mother if her attorney had called witnesses on her behalf or asked questions of witnesses about her prior terminations.

MCR 3.977(E)(2) requires the trial court to determine that statutory grounds for jurisdiction exist before it proceeds to termination at the initial disposition. To exercise jurisdiction, the trial court must find by a preponderance of the evidence that the child falls within at least one statutory ground listed in MCL 712A.2(b). *In re Kellogg*, 331 Mich App at 253.

The trial court exercised jurisdiction under MCL 712A.2(b)(1) and (b)(2), which state, in relevant part, as follows:

The court has the following authority and jurisdiction:

* * *

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

As detailed above, it is undisputed that respondent-mother presented at the emergency department of a hospital, told the staff that she was no longer able to care for LC, said that she could not look at LC anymore because this was making her mental health worse, and asked the hospital staff to call CPS to take LC away. As a result, it was likewise undisputed that LC was a juvenile whose parent, respondent-mother, refused to provide proper or necessary support or other care necessary for her health or morals, and who was abandoned by her parents,[1] under MCL 712A.2(b)(1).[2]

---

[1] At her birth, LC's mother identified the biological father of LC. That person told the CPS investigator that he was LC's father, but he did not establish legal parentage over LC. The unknown father's parental rights were terminated on the same day as respondent-mother's rights. Neither the biological father that the mother identified nor the unknown father have appealed that order.

[2] We are mindful that the Michigan Supreme Court recently reversed an order of adjudication, in the context of a parent who refused to pick up their child from a hospital, in *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166509). However, we find that case to be inapplicable to the present matter. In *Lange*, the Court held that there was no jurisdiction under MCL 712A.2(b)(1) or (b)(2) when a respondent left her severely mentally ill child at a hospital because, *inter alia*, the respondent feared that the child would "pose a significant risk to himself, respondent's other children, their pets, and herself" due to mental health issues that were particularly violent and resistant to treatment. *Id*. at ___; slip op at 1-2, 14. In the present case, it is respondent-mother who had the mental-health issues, not the child, who was subject to the family court's jurisdiction as stated. Thus, *Lange* is clearly distinguishable from this case.

Because we find that the trial court erred when it terminated respondent-mother's rights at the dispositional stage, we need not reach respondent-mother's other arguments on appeal.

We vacate the trial court's order terminating respondent-mother's parental rights, affirm the court's order of adjudication, and remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Randy J. Wallace